ADAM E. DAVALOS (SBN 256828)
BOOTH & DAVALOS, LLP
3936 Hortensia Street
San Diego, CA  92110
Telephone:      (619) 354-1233
Facsimile:       (619) 764-5801
Email:       adavalos@businesslawsd.com

Attorneys for Plaintiffs
Shizue Teshima and Stuart Teshima

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIZUE TESHIMA, an indivdual, and STUART TESHIMA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEVWEST, INC., a California Corporation, ALFREDO LIBURD, an individual, YOLINDA DELAVIN, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO.   **'17 CV 2465 DMS NLS**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>1. **Federal Securities Fraud;**<br>2. **Violation of Section 20(a);**<br>3. **Fraudulent Inducement;**<br>4. **Negligent Misrepresentation**<br>5. **California Securities Fraud**<br>6. **Rescission – Cal. Corp. Code §25501**<br>7. **Unfair Business Transaction – Cal. Bus. & Prof. Code § 17200**<br>8. **Breach of Contract – Promissory Note**<br>9. **Breach of Contract – Expense Reimbursement**<br>10. **Breach of Employment Contract** |

JURY TRIAL DEMANDED

COMES NOW, PLAINTIFFS SHIZUE TESHIMA, an individual, and STUART TESHIMA, an individual, who bring this action against DEFENDANTS NEVWEST, INC. a California Corporation, ALFREDO LIBURD, an individual, and YOLINDA DELAVIN, an individual, and DOES 1 through 25, inclusive, and allege as follows:

1

*Teshima v. NevWest, Inc.*

**INTRODUCTION**

1.      This case arises out of the fraudulent sales of unregistered, non-exempt offering of securities to Plaintiff Stuart Teshima by Defendant Alfredo Liburd, Chief Executive Officer and Chief Financial Officer of NevWest, Inc., in exchange for $94,860.02 which Plaintiff Stuart Teshima paid by providing $44,897.96 in cash and a promissory note in the amount of $49,962.06. The Defendant Alfredo Liburd agreed, as Chief Executive Officer and Chief Financial Officer, to sell 44% of the common stock of Defendant NevWest, Inc.  Plaintiff Stuart Teshima entered into an agreement whereby he agreed to purchase the stock to be held by Plaintiff Stuart Teshima and his wife Plaintiff Shizue Teshima. However, Plaintiff Alfredo Liburd, with the assistance of Defendant Yolinda Delavin, induced Plaintiff Stuart Teshima to enter into the transaction through fraud.

2.      Defendants further induced Plaintiffs Stuart Teshima and Shizue Teshima to make further capital contributions of $190,000 to NevWest, Inc. Defendants further induced Plaintiff Stuart Teshima to incur in excess of $12,545.03 and Plaintiff Shizue Teshima to incur in excess of $16,976.45 in unreimbursed expenses on behalf of NevWest, Inc.  Defendants further induced Plaintiff Shizue Teshima to enter into a promissory note with NevWest, Inc. for $75,000 of which, only $25,000 was repaid to Shizue Teshima. Finally, despite entering into written employment agreements, Defendant NevWest failed to pay any compensation.

3.      During this time, Defendant Liburd, without authorization, diverted corporate funds for his personal use. He induced Plaintiffs to unnecessarily contribute additional capital, provide loans, pay for unreimbursed expenses, and defer employment salaries and benefits. Ultimately, Defendant Liburd induced Plaintiffs to sell their stock back to Defendant Liburd for $1 under the misapprehension of personal liability for NevWest, Inc. obligations and a then pending investigation of NevWest, Inc. and Defendant Liburd by the Federal Government.

4.      Plaintiffs seek to rescind the stock transactions, and seek their damages.

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

**JURISDICTION AND VENUE**

5.    This action arises under the anti-fraud provisions of the Securities Exchange Act of 1934, as amended, and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. §240.10b-5).  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 15 U.S.C. §78aa. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the related claims asserted herein.

6.    The Court has personal jurisdiction over this action because Defendants hold their principal place of business in this Judicial District. All the acts complained of below occurred in this Judicial District.

7.    Venue properly lies in this Court pursuant to 28 U.S.C. §1391(b) because Plaintiffs' claims arose in this Judicial District. Further, both parties reside in this Judicial District. All of the acts complained of below occurred in this Judicial District.

**The Parties**

8.    PLAINTIFFS Shizue Teshima and Stuart Teshima, are individuals residing in the County of San Diego, State of California.

9.    DEFENDANT NevWest, Inc. ("Defendant NWI") is a California Domestic Corporation, with its principal place of business located at 1225 South Exposition Way, Suite 140, San Diego, CA 92154.

10.    DEFENDANT Alfredo Liburd ("Defendant Liburd"), now, and at all times mentioned in this Complaint is the Chief Financial Officer and/or Chief Executive Officer of NevWest, Inc.

11.    DEFENDANT Yolinda Delavin, ("Defendant Delavin"), now, and at all times mentioned in this Complaint is the company accountant for NevWest, Inc.

12.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein under the fictitious names DOES 1 through 20, inclusive. Plaintiffs are informed and believe that each of the Defendants are responsible in some manner for the current damages alleged in this Complaint.

13.    At all times mentioned in the causes of action into which this paragraph

3

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

is incorporated by reference, each Defendant was the agent/employee of each and every other Defendant. In doing the things alleged in the causes of action to which this paragraph is incorporated by reference, each and every Defendant was acting within the course and scope of this agency and employment and was acting with the consent, permission, and authorization of each of the other Defendants. All actions of each of the Defendants alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other Defendant.

## FACTUAL BACKGROUND
### *THE STOCK PURCHASE*

14.   In or about August 2015, Defendant Liburd, as Chief Executive Officer and Chief Financial Officer of NWI approached Plaintiffs seeking investment in NWI. He represented to Plaintiffs that NWI is an approved United States defense contractor under the Small Business Administration 8(a) program and that he had over five years of experience in electronic equipment repairs for the United States Navy.

15.   Defendant Liburd is, and at all relevant times was, the Chief Financial Officer and/or Chief Executive Officer of NWI. Defendant Liburd advised Plaintiffs NWI was a profitable defense contractor.  Plaintiffs advised Defendant Liburd they required NWI financial statements and disclosures prior to investing in NWI.

16.   Defendant Liburd caused to be prepared falsified NWI financial records including quarterly customer sales summaries and a profit and loss statement for the first half of 2015. Defendant Liburd directed Defendant Delavin to falsify the sales summaries and profit and loss statement by backdating and falsifying invoices to reflect inflated sales and income for the first half of 2015 and by misrepresenting NWI's debt.

17.   Defendants Liburd and Delavin conspired to falsify the sales summaries and profit and loss statements by backdating and falsifying invoices, and in fact did so. Defendants Liburd and Delavin provided the falsified sales summaries and profit

4

*Teshima v. NevWest, Inc.*

and loss statements to Plaintiffs, representing these financial records as accurate and as evidence of NWI's profitability.

18.    After providing the falsified financial records, Defendant Liburd made several calls, emails, and text messages to Plaintiffs regarding NWI, its projected profitability and the opportunity to purchase NWI stock.

19.    During this time, Defendant Liburd, acting as the Chief Financial Officer and Chief Executive Officer of NWI, repeatedly and continuously made the following misrepresentations:

    a.  That NWI was profitable and earned in excess of $100,000 in net profit in the first half of 2015;

    b.  That NWI sales in the first half of 2015 were in excess of $300,000 more than the sales actually made in the first half of 2015;

    c.  That NWI had made sales in the first half of 2015 which were not in fact made until the third quarter of 2015;

    d.  That NWI could meet its payroll obligations;

    e.  That NWI could meet its debt service obligations.

20.    At all times, Plaintiffs relied upon the financial statements, false representations provided by Defendants Liburd and Delavin and the omission of information by Defendants in evaluating the financial stability and profitability of NWI.

21.    In addition, Defendant Liburd failed to disclose to Plaintiffs material information regarding NWI. Specifically, Defendant Liburd failed to disclose illegal loans he received. From April 26, 2011 through at least September 2015, Defendant Liburd, on behalf of NWI engaged in illegal conduct including aiding and abetting the willful participation, both personally and substantially, of a Government officer and employee, through decision, approval and recommendation in a contract and other particular matter as a Combat Support Port Engineer, in which NWI and Defendant Liburd had a financial interest.

5

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

22.     The Government officer and employee John Nasshan, in his position as a Combat Systems Port Engineer, recommended which contractors were qualified for jobs, verified and certified work performed on Navy ships by contractors including NWI.

23.     From April 26, 2011 through at least September 2015, NWI, via Defendant Liburd, received more than $30,000 in loans from John Nasshan.  In order to aid and assist John Nasshan's illegal activity, Defendant Liburd agreed to:

    a.  Deal in cash when exchanging amounts over $10,000; and

    b.  Keep his financial arrangement with Nasshan secret.

24.     In September 2015, Defendant Liburd accepted thousands of dollars in cash from John Nasshan as a loan. On or about November 13, 2015, Defendant Liburd falsely told a Defense Criminal Investigative Service agent that Defendant Liburd never:

    a.  Received money from John Nasshan, including cash;

    b.  Paid Mr. Nasshan any money; and

    c.  Obtained any loans from Mr. Nasshan.

25.     In providing disclosures regarding NWI in relation to the stock offering, Defendant Liburd failed to disclose that he, on behalf of NWI as its Chief Executive Officer and Chief Financial Officer, had engaged in illegal activity as described above.

26.     Plaintiffs are informed and believe, and thereon allege, Defendant Liburd fraudulently induced Plaintiff Stuart Teshima to purchase the stock, as described above, for the specific purpose of repaying John Nasshan before the Defendant Liburd's and John Nasshan's illegal activity was detected by a Criminal Investigative Service agent.

27.     Defendant Liburd, subsequently failed to disclose to Plaintiffs that he and NWI were being investigated for the illegal activity described above.

28.     In 2017, Defendant Liburd was charged with violating 18 U.S.C. §208

6

*Teshima v. NevWest, Inc.*

(Conflict of Interest) and 18 U.S.C. §2 Aiding and Abetting, as described above. Defendant Liburd plead guilty and on September 12, 2017, the court accepted Defendant Liburd's guilty plea.

29.    Considering Defendant Liburd's substantial experience as a government contractor, as well as the experience of company accountant Yolinda Delavin, Plaintiffs' reliance upon the false and misleading financial statements, misrepresentations and omissions was reasonable.

30.    In reliance upon the financial documents, misrepresentations and omissions described above, Plaintiffs agreed to purchase 44% of the common stock of NWI for $94,860.02.

31.    On or about September 3, 2015, Plaintiff Stuart Teshima entered into a written agreement ("Stock Purchase Agreement") to purchase and Defendant Liburd agreed to sell 44% of the shares of common stock of NWI for the purchase price of $94,860.02. The Stock Purchase Agreement required Plaintiff Stuart Teshima to pay $44,897.96 in cash to the seller and provide a note in the amount of $49,962.06. The transaction closed on September 3, 2015. The Stock Purchase Agreement is attached hereto as **Exhibit 1.**

32.    In the Stock Purchase Agreement, Defendant Liburd, as President/CEO of NWI, warrantied and represented that, among other things:

a. "The Seller is the lawful owner of the Stock, free and clear of any encumbrances, security interests or liens of any kind and has full power and authority to sell and transfer the Stock as contemplated in this Agreement."

b. "To the Seller's knowledge, the Company is duly organized, validly existing and in good standing under the laws of the State of California and has full power and authority to own and operate its property and assets and to carry on its business as presently conducted."

33.    In reliance upon the statements made by Defendants, on or about

7

*Teshima v. NevWest, Inc.*

September 3, 2015, Plaintiff Stuart Teshima executed the Stock Purchase Agreement. In further reliance upon the statements made by Defendants, on or about September 3, 2015, Plaintiffs provided a check in the amount of $44,897.96 payable to Defendant Liburd per the Stock Purchase Agreement.

34.    At all times Plaintiffs were under the reasonable impression that NWI sales reports and profit and loss statements were true and accurate. Plaintiffs also reasonably believed NWI had a net profit in excess of $100,000 in the first half of 2015.  Plaintiffs also reasonably believed NWI sales in the first half of 2015 were significantly greater than the NWI sales actually made in the first half of 2015. Plaintiffs reasonably believed NWI made sales in the first half of 2015 which were not in fact made until the third quarter of 2015. Plaintiffs reasonably believed NWI could meet its payroll obligations. Plaintiffs reasonably believed NWI could meet its debt service obligations. Plaintiffs reasonably believed the profit and loss statements provided by Defendants accurately reflected NWI's debt obligations. Plaintiffs reasonably believed that NWI was a California corporation in good standing with the full power and authority to carry on its business as was being conducted in 2015. Plaintiffs reasonably believed neither Defendant Liburd nor NWI were engaged in illegal business activities.

35.    However, the representations made by Defendant Liburd, as aided and abetted by co-conspirator Defendant Yolinda Delavin, were false. The truth was that:

    a.  The sales reports and profit and loss statements provided by Defendants Liburd and Yolinda Delavin were falsified;

    b.  Defendants Liburd and Yolinda Delavin backdated NWI invoices and payments to inflate sales in the first half of 2015, as reflected on the sales reports and profit and loss statements Defendants provided to Plaintiffs;

    c.  NWI did not have a net profit in excess of $100,000 in the first half of 2015, but rather a net loss of $200,000 due to the backdating of $300,000 of invoices;

8

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

d.  NWI's sales for the first half of 2015 were at least $300,000 less than represented by Defendants in the profit and loss statements provided by Defendants to Plaintiffs;

e.  Some sales recorded in the sales reports and represented in the profit and loss statements, provided by Defendants to Plaintiffs, were in fact made, invoiced and paid in the third quarter of 2015;

f.  NWI could not meet its payroll obligations;

g.  NWI could not meet its debt service obligations;

h.  The profit and loss statement provided to Plaintiffs by Defendants did not accurately reflect all NWI's debt obligations;

i.  NWI was not authorized to sell and transfer the stock as contemplated in the Stock Purchase Agreement;

j.  NWI was engaged in illegal activities including violations of 18 U.S.C. §208 (Conflict of Interest) and 18 U.S.C. §2 Aiding and Abetting;

k.  NWI was not authorized to carry on its business as it was then conducting business.

36.  By virtue of Defendants Liburd's and Delavin's knowledge, Defendant NWI also knew that the statements were false and/or misleading and that material omissions were made. Defendants intentionally failed to inform Plaintiffs of such essential facts.

37.  As one of only two officers of NWI, Defendant Liburd knew that his representations were false and/or misleading. He further knew that his omissions were material to the decision to purchase NWI stock.

38.  As the company accountant for NWI, Defendant Delavin knew that the backdating of invoices and specially generating sales reports and profit and loss statements based on those backdated records for Plaintiffs, would provide Plaintiffs with false and/or misleading information.

39.  Defendants Liburd and Delavin intentionally made the false and/or

9

*Teshima v. NevWest, Inc.*

misleading statements and representations, and provided falsified financial documents to Plaintiffs in an attempt to lure Plaintiff Stuart Teshima to transfer $44,897.96 in cash to an NWI bank account and provide a note in the amount of $49,962.06.

40.     Defendants Liburd and Delavin subsequently induced Plaintiffs Stuart Teshima and Shizue Teshima to make further capital contributions of $190,000 based on Defendants' ongoing misrepresentations and omissions.

41.     As a direct result of Defendants' misrepresentations and omissions, Plaintiffs Stuart Teshima and Shizue Teshima have incurred damages arising from the fraudulent sales of unregistered, non-exempt offering of securities.

### *Promissory Note*

42.     On or about February 22, 2016, Plaintiff Shizue Teshima and NWI entered into a written promissory note (the "Promissory Note") in the amount of $75,000. Defendant Liburd requested the loan on behalf of Defendant NWI to meet NWI payroll then due. A true and correct copy of the Promissory Note is attached hereto as **Exhibit 2.**

43.     In exchange for Plaintiff Shizue Teshima giving $75,000 to NWI, NWI promised to repay the loan of $75,000 when invoice NW-205541 in the amount of $84,042.45 was collected.

44.     Defendant Liburd personally guaranteed the note.

45.     On or about April 2016, NWI collected invoice NW-205541, making the full $75,000 due under the Promissory Note.

46.     On April 1, 2016, NWI repaid $25,000 to Plaintiff Shizue Teshima, leaving an unpaid balance of $50,000.

47.     Plaintiff Shizue Teshima demanded payment of the remaining $50,000. To date, Defendant NWI and Defendant Liburd have failed and refused to repay the remaining $50,000.

/ / /

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

*Unreimbursed Expenses*

48.    Plaintiffs Shizue Teshima and Stuart Teshima entered into oral agreements with Defendants NWI and Liburd to pay for certain of NWI's expenses.

49.    Defendants NWI and Liburd agreed to reimburse Plaintiffs Shizue Teshima and Stuart Teshima for such expenses.

50.    Via an agreement dated March 28, 2016, Defendant Liburd acknowledged NWI's obligation to reimburse Plaintiff Shizue Teshima $16,976.45 for expenses she paid on behalf of NWI; and, NWI's obligation to reimburse Plaintiff Stuart Teshima $12,545.03 for expenses he paid on behalf of NWI. This agreement is attached hereto as **Exhibit 3.**

51.    Defendant Liburd, on behalf of himself and NWI, agreed to a repayment plan of four monthly payments to each Plaintiff, starting April 8, 2016.

52.    Plaintiffs Shizue Teshima or Stuart Teshima made demand for payment to both Defendant NWI and Liburd for the expense reimbursement as memorialized in the March 28, 2016 letter.

53.    To date, neither Defendant NWI or Liburd have made payments or otherwise reimbursed Plaintiffs Shizue Teshima or Stuart Teshima.

*Employment Agreements*

54.    In September 2015, Plaintiffs Shizue Teshima and Stuart Teshima entered into written employment agreements with NWI.

55.    By the terms of a written employment agreement, Plaintiff Shizue Teshima was given the position of Corporate Controller at the annual salary of $50,000 per year.

56.    By the terms of a written employment agreement, Plaintiff Stuart Teshima was given the position of Chief Financial Officer at the annual salary of $100,000 per year.

57.    Plaintiffs were employed by NWI from September 2015 to March 1, 2015.

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

58.   Defendant NWI failed and refused, and continues to fail and refuse to pay the compensation earned and due to Plaintiffs under the written employment agreements.

***Siphoning of Funds To Induce Plaintiffs to Forego Salaries and Ultimately Sell Stock Back***

59.   Defendant Liburd engaged in a pattern and practice of diverting corporate funds for his personal use, defrauding NWI and its shareholders.

60.   Starting in 2015, Defendant Liburd caused NWI to sell its accounts receivable to E Capital, Dephinus Engineering, Inc. and Continental Tide Defense Systems, Inc., for $1,190,000, approximately 85% of the value of the accounts receivable.

61.   Funds received from E Capital, Dephinus Engineering, Inc. and Continental Tide Defense Systems, Inc. were then deposited into a Navy Federal Credit Union bank account and applied to the NWI accounts receivable.

62.   However, of the $1.91 million, only $1.041 million was deposited into an NWI account while $154,500 was diverted to the owner's draw, educational expenses, building expenses and contribution expense.

63.   The Plaintiffs are informed and believe and thereon allege that the educational expenses, building expenses and contribution expense were in fact mislabeled expenses which were in fact used to fund Defendant Liburd's personal expenses including the care and maintenance of a mistress.

64.   The diversion of these funds was not an authorized transaction under NWI's bylaws or generally accepted accounting principles.

65.   The diversion of these funds, in part, caused NWI to be unable to meet its expenses. Furthermore, the diversion of these funds defrauded the shareholders of distributions to which they were entitled.

66.   Instead of the shareholders receiving distributions of income, Defendant Liburd convinced Stuart Teshima that the investment of additional capital was

12

*Teshima v. NevWest, Inc.*

1  necessary in order the keep NWI financially solvent.

2      67.    In addition, Defendant Liburd convinced Plaintiffs Shizue Teshima and

3  Stuart Teshima to defer employment income due under their employment agreements

4  with NWI, pay for NWI expenses with the promise that NWI and Defendant Liburd

5  would reimburse such expenses paid by Plaintiffs, and have Plaintiffs provide short-

6  term loans to NWI to cover such expenses as payroll for the workers.

7      68.    In sum, Defendant Liburd, with the assistance of Defendant Delvin,

8  fraudulently induced Plaintiffs Stuart Teshima and Shizue Teshima to invest

9  $94,860.02 for 44% of the common stock of NWI and fraudulently induced Plaintiffs

10  Stuart Teshima and Shizue Teshima to make further capital contributions of over

11  $190,000. In addition, Defendant Liburd compounded the Plaintiffs' damages by

12  inducing them to become employees of NWI, yet failing to pay the compensation

13  promised. To add insult to injury, Defendant Liburd induced Plaintiffs to pay

14  expenses of NWI and loan NWI substantial amounts for NWI to meet its financial

15  obligations, all while Defendant Liburd diverted NWI income for his personal benefit.

16  Finally, under the implication of personal liability for NWI obligations and a federal

17  investigation, Defendant Liburd induced Plaintiffs to sell their NWI stock back to him

18  for $1. A copy of the agreement between Defendant Liburd and Plaintiff Stuart

19  Teshima for the repurchase of Stuart Teshima's stock is attached hereto as **Exhibit 4.**

20  **FIRST CAUSE OF ACTION**

21  Violation of the Securities and Exchange Action of 1934, Rule 10(b) and S.E.C.

22  Rule 10b-5; 15 U.S.C. §78j(b), *et seq.* and 17 C.F.R. § 240.10b-5

23  (Against All Defendants)

24      69.    Plaintiffs hereby incorporate by reference paragraphs 1-68 of this

25  Complaint as if fully set forth herein.

26      70.    As described above, Defendants made untrue statements of material facts

27  or omitted to state material facts necessary in order to make the statements made, in

28  light of the circumstances under which they were made, not misleading.

13

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

71.    As described above, Defendants acted knowingly or severely recklessly in these actions and inactions.

72.    As described above, Defendants made the false and/or misleading statements with the intention to deceive and mislead Plaintiff Stuart Teshima, to fraudulently induce him to invest in NWI, and to fraudulently misappropriate and obtain control over the funds representing Plaintiff Stuart Teshima's investment.

73.    In reliance on the foregoing misrepresentations and material omissions by Defendants, Plaintiffs Stuart Teshima and Shizue Teshima were induced to buy the securities, as a direct and proximate result of which, they lost their investment and capital contribution.

74.    By reason of the foregoing, Defendants violated section 10(b) of the 1934 Act and Rule 10b-5 thereunder.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of the 1934 Act

### (Against All Individual Defendants)

75.    Plaintiffs hereby incorporate by reference paragraphs 1-74 of this Complaint as if fully set forth herein.

76.    As described above, Individual Defendants, including Defendants Liburd and Delavin, acted as controlling persons of Defendant NWI within the meaning of Section 20(a) of the 1934 Act.

77.    As described above, Defendant Liburd is the chief executive officer and chief financial officer for NWI. Defendant Delavin is the company accountant for NWI. By virtue of their positions with the Company and participation in and/or awareness and/or intimate knowledge of the false and misleading statements and omissions, Defendants Liburd and Delavin had the power and authority to cause NWI to engage in the wrongful conduct complained of herein.

78.    As set forth above, Defendants NWI, Liburd and Delavin violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

14

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

79.   By virtue of their positions with the company as controlling persons, Defendants Liburd and Delavin are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants Liburd's and Delavin's wrongful conduct, Plaintiffs Stuart Teshima and Shizue Teshima has suffered damages.

### THIRD CAUSE OF ACTION

Fraudulent Inducement

(Against All Defendants)

80.   Plaintiffs hereby incorporate by reference paragraphs 1-80 of this Complaint as if fully set forth herein.

81.   As described above, Defendants made false statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

82.   Defendants knew or should have known at the time they made the false representations/promises, that they were false.

83.   As described above, Defendants made the false statements with the intention to deceive and mislead Plaintiffs Stuart Teshima and Shizue Teshima, to fraudulently induce Plaintiffs to invest in NWI, to fraudulently misappropriate and obtain control over the funds representing Plaintiffs' investment, and to ultimately sell the stock back to Defendant Liburd for $1.

84.   Plaintiffs reasonably and justifiably relied on the false misrepresentations made by Defendants as enumerated above and were thereby induced to make the initial investment of $94,860.02 and subsequent additional capital contributions of $190,000.

85.   As a direct and proximate result of Defendants' false representations and omissions as described above, Plaintiffs suffered loss and damages as they have not received the benefit of their investment and capital contribution made to NWI.

### FOURTH CAUSE OF ACTION

Negligent Misrepresentation

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

(Against All Defendants)

86.     Plaintiffs hereby incorporate by reference paragraphs 1-85 of this Complaint as if fully set forth herein.

87.     At the time that Defendants made the foregoing false representations and material omissions to Plaintiffs, Defendants had no reasonable ground for believing them to be true.

88.     These false representations and omissions were made by Defendants in a reckless and negligent manner not warranted by the information that Defendants had concerning the subject matter of the representations and without regard to whether or not they were true.

89.     In their positions with NWI, Defendants knew or should have known that their representations to Plaintiffs were false and/or misleading. Defendants were the only people at NWI who possessed all accurate and material information as to the status of NWI, and thus Plaintiffs reasonably relied upon Defendants' superior knowledge.

90.     The statements were presented to Plaintiffs as existing facts and not opinion. Defendants, who were the only controlling persons of NWI who possessed all accurate and material information, made the false statements in such a way that Plaintiffs reasonably believed that the company was financially stable and engaged in legitimate operations that did not violate state or federal laws. These statements and representations were all presented to Plaintiffs as existing facts.

91.     As a direct and proximate result of Defendants' misrepresentations as described above, Plaintiffs suffered loss and damages as they have not received the benefit of the investment and capital contribution made to NWI.

### FIFTH CAUSE OF ACTION

California Securities Fraud

(Against All Defendants)

92.     Plaintiffs hereby incorporate by reference paragraphs 1-91 of this

16

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

Complaint as if fully set forth herein.

93.    As described above, Defendants sold securities to Plaintiffs, by means of written or oral communication that include untrue statements of material facts or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

94.    Defendants acted knowingly or severely reckless in this actions and inactions.

95.    Plaintiffs are informed and believe and thereon allege that Defendants made the false and/or misleading statements with the intention to deceive and mislead Plaintiffs, to fraudulently induce Plaintiffs to invest in NWI, and to fraudulently misappropriate and obtain control over the funds representing Plaintiffs' investment and capital contributions.

96.    In reliance on the foregoing misrepresentations and material omissions by Defendants, Plaintiffs were induced to buy the securities, as a direct and proximate result of which, Plaintiffs lost their investment and capital contributions.

97.    By reason of the foregoing, Defendants violated California Corporations Code section 25401.

98.    Defendants Liburd and Delavin are jointly and severally liable with Defendant NWI under California Corporations Code sections 25501, 25504, and 25504.1.

<u>**SIXTH CAUSE OF ACTION**</u>

<u>Rescission Pursuant to California Corporations Code section 25501</u>

<u>(Against All Defendants)</u>

99.    Plaintiffs hereby incorporate by reference paragraphs 1-98 of this Complaint as if fully set forth herein.

100.   As described above, Defendants sold securities to Plaintiffs, by means of written or oral communication that include untrue statements of material facts or omit to state a material fact necessary to make the statements made, in the light of

17

1    the circumstances under which the statements were made, not misleading.

2        101.   As described above, Defendants subsequently purchased such securities

3    back from Plaintiff Stuart Teshima for $1, by means of written or oral

4    communication that includes untrue statements of material facts or omit to state a

5    material fact necessary to make the statements made, in the light of the

6    circumstances under which the statements were made, not misleading.

7        102.   As a result of the misrepresentation described herein, Plaintiffs are

8    entitled to rescission of the agreements. Thus, Plaintiffs intend the service of this

9    complaint to serve as notice to Defendants of rescission of the agreements and

10   Plaintiffs offer to restore to Defendants all consideration furnished by Defendants to

11   Plaintiffs pursuant to the agreements on condition that Defendants restore to

12   Plaintiffs all consideration and subsequent capital contributions furnished by

13   Plaintiffs, plus compound interest at the legal rate.

## SEVENTH CAUSE OF ACTION

Violation of Business and Professions Code Section 17200 et seq.

(Against All Defendants)

17       103.   Plaintiffs hereby incorporate by reference paragraphs 1-102 of this

18   Complaint as if fully set forth herein.

19       104.   By reason of Defendants' unlawful, fraudulent, and unfair conduct as

20   herein alleged, Defendants have violated California Business and Professions Code

21   section 17200.

22       105.   Defendants knowingly made the foregoing false and/or misleading

23   statements with the intention to deceive and mislead Plaintiffs, to fraudulently

24   induce Plaintiffs to invest in NWI, and to fraudulently misappropriate and obtain

25   control over the funds representing Plaintiffs' investment and capital contributions.

26   Defendants' conduct was unlawful and immoral because it was done in violation of

27   both federal and state securities laws.

28       106.   Considering the extensive knowledge and experience that Defendants

18

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

1  claim to have in directing and operating a government contracting company, people

2  with no or little investment experience are likely to reasonably rely on Defendants'

3  tempting promises, and thus incur damages. Accordingly, members of the public are

4  likely to be deceived by Defendants' immoral and unlawful business practice.

5  107.  As a direct and proximate result of the acts of Defendants, as described

6  above, Plaintiffs have incurred significant damages including the initial investment

7  of $94,860.02, subsequent capital contributions of $190,000, unreimbursed expenses

8  of $29,521.48, and $50,000 of outstanding principal due under a promissory note,

9  plus compound interests at legal rate.

10  108.  By reason of the above-alleged fraudulent, deceptive, and unfair acts on

11  Defendants' part, Plaintiffs seek disgorgement of Defendants' ill-gotten gains.

12  Plaintiffs also seek a further order by this Court enjoining Defendants from

13  continuing to conduct business through the fraudulent, deceptive, and unfair acts

14  herein described.

15  **EIGHTH CAUSE OF ACTION**

16  Breach of Contract – Promissory Note

17  (Against Defendants NWI and Liburd)

18  109.  Plaintiffs hereby incorporate by reference paragraphs 1-108 of this

19  Complaint as if fully set forth herein.

20  110.  Plaintiff Shizue Teshima entered into the Promissory Note with

21  Defendant NWI, as alleged above. Defendant Liburd personally guaranteed

22  repayment of the note.

23  111.  Pursuant to the terms of the Promissory Note, Plaintiff Shizue Teshima

24  gave Defendant NWI $75,000 on or about February 22, 2016.

25  112.  Defendants NWI and Liburd agreed to repay the note in full when NWI

26  invoice NW-205541 in the amount of $84,042.45 was collected.

27  113.  Invoice NW25541 in the amount of $84,042.45 was collected on or

28  about April 2016, and the amount due under the Promissory Note became payable.

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

19

*Teshima v. NevWest, Inc.*

114.   Plaintiff Shizue Teshima performed all of her obligations and met all conditions under the Promissory Note, except to the extent any such obligations or conditions have been excused, prevented or waived by Defendants' acts and omissions.

115.   On April 1, 2016, Defendant NWI repaid Plaintiff Shizue Teshima $25,000, leaving a principal balance of $50,000.

116.   Plaintiff Shizue Teshima has made demand to Defendants for repayment of the remaining principal of $50,000.

117.   Defendants have breached the Promissory Note by failing to repay Plaintiff Shizue Teshima in full, leaving a principal balance due of $50,000.

118.   Plaintiff Shizue Teshima has been damaged as a direct result of Defendants' breaches as set forth above in the amount of $50,000.

## NINTH CAUSE OF ACTION

### Breach of Contract – Expense Reimbursement

### (Against Defendants NWI and Liburd)

119.   Plaintiffs hereby incorporate by reference paragraphs 1-118 of this Complaint as if fully set forth herein.

120.   On or about December 2015, Plaintiffs Shizue Teshima and Stuart Teshima entered into an oral agreement to pay for certain expenses incurred by NWI. Defendants NWI and Liburd agreed to reimburse Plaintiffs for such expenses.

121.   The oral agreement to pay expenses on Defendants' behalf and be reimbursed for such expenses is a valid, binding and enforceable contract.

122.   Between December 2015 and March 2016, at the request of Defendants NWI and Liburd, Plaintiff Shizue Teshima paid for $16,976.45 in expenses on behalf of NWI, and Plaintiff Stuart Teshima paid for $12,545.03 in expenses on behalf of NWI.

123.   Plaintiffs have met every obligation and condition of the oral agreement, except to the extent any such obligations or conditions have been

20

*Teshima v. NevWest, Inc.*

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

excused, prevented or waived by Defendants' acts and omissions.

124.   Via a letter dated March 28, 2016, Defendant Liburd acknowledged that NWI owed the above amounts to Plaintiffs and promised payment via four consecutive monthly installments starting April 8, 2016.

125.   Plaintiffs have made repeated demands for reimbursement of the expenses.

126.   Defendants NWI and Liburd have failed and refused to reimburse the expenses paid by Plaintiffs and incurred on behalf of Defendants.

127.   Plaintiff Shizue Teshima has been damaged as a direct result of Defendants' breaches as set forth above in the amount of $16,976.45, and Plaintiff Stuart Teshima has been damaged as a direct result of Defendants' breaches as set forth above in the amount of $12,545.03.

## TENTH CAUSE OF ACTION

### Breach of Employment Contract

(Against Defendants NWI and Liburd)

128.   Plaintiffs hereby incorporate by reference paragraphs 1-127 of this Complaint as if fully set forth herein.

129.   On or about September 5, 2015, Plaintiffs Shizue Teshima and Stuart Teshima entered into the employ of Defendant NWI.

130.   By the terms of a written employment agreement, Plaintiff Shizue Teshima was given the position of Corporate Controller at the annual salary of $50,000 per year. Additional benefits include four weeks of vacation per year. In addition, Plaintiff Shizue Teshima was included in a Services Incentive Compensation Program and Bonus Program. The written agreement is attached hereto as **Exhibit 5.**

131.   By the terms of a written employment agreement, Plaintiff Stuart Teshima was given the position of Chief Financial Officer at the annual salary of $100,000 per year. Additional benefits include four weeks of vacation per year. In

21

BOOTH & DAVALOS, LLP
ATTORNEYS AT LAW

addition, Plaintiff Shizue Teshima was included in a Services Incentive Compensation Program and Bonus Program. The written agreement is attached hereto as **Exhibit 6.**

132.   Plaintiffs Shizue Teshima and Stuart Teshima were employed by NWI, pursuant to the written employment agreements, from September 8, 2015 to March 1, 2016.

133.   Plaintiffs Shizue Teshima and Stuart Teshima have done all things that have been required to be done by them under their respected employment contracts, and they are in no manner in breach thereof.

134.   Defendant NWI has failed and refused to pay the compensation due under the written employment agreements.

135.   As a direct result of Defendant NWI's breach of the written employment contracts, Plaintiffs Shizue Teshima has suffered damages in an amount exceeding $25,000 and Plaintiff Stuart Teshima has suffered damages in an amount exceeding $50,000.

## JURY DEMAND

136.   Plaintiffs hereby demand a jury trial in this case.

## PRAYER FOR RELIEF

**W**HEREFORE, Plaintiffs pray judgment against Defendants, and each of them as follows:

(1)    For compensatory damages, according to proof;

(2)    For consequential damages, according to proof;

(3)    For an accounting;

(4)    For injunctive relief;

(5)    That Plaintiffs recover their attorney's fees, costs and expenses incurred herein as a result of the exceptional circumstances of this case;

(6)    For prejudgment compound interest on all sums;

(7)    For rescission;

*Teshima v. NevWest, Inc.*

1    (8)    For cost of suit incurred herein; and

2    (9)    For such other relief as the Court may deem proper.

3

4    DATED:                    BOOTH & DAVALOS, LLP

5    December 7, 2017
                               By:   /s/ ADAM E. DAVALOS
6
                               Adam E. Davalos
7                              Attorney for Plaintiffs
                               Shizue Teshima and Stuart Teshima
8                              E-mail:  adavalos@businesslawsd.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOOTH & DAVALOS. LLP
ATTORNEYS AT LAW